-O-

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY A. HOWELL, | ) Case No. CV 08-935-OP |
| Plaintiff, | ) |
| vs. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation filed on November 10, 2008.[2]

///
///
///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 10, 11.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation ("JS"), filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly determined that Plaintiff had no severe mental impairment; and
2. Whether the ALJ properly restated and weighed the physical function opinions of treating physicians Eilat, Nathan, and Salick.

(JS at 19.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///
///
///

## III.

## DISCUSSION

**A. The ALJ Properly Determined That Plaintiff Had No Severe Mental Impairment.**

Plaintiff contends that the extensive evidence of mental disability presented was too significant for the ALJ to dismiss and that the stated reasons for determining she had no severe mental impairment were legally insufficient. (JS at 20.) This Court disagrees.

**1. Substantial Evidence Supports the ALJ's Determination.**

Title 20 C.F.R. § 404.1521 defines a "non-severe impairment" as one which does not significantly – i.e., more than minimally – limit one's physical or mental capacity to perform basic work-related functions. See Bowen v. Yuckert, 482 U.S. 137, 154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). Examples of such functions would be the ability to sit, stand, walk, lift, carry, push, pull, reach, or handle; see, hear, and speak; understand, remember, and carry out simple instructions; use judgment; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a work setting. 20 C.F.R. § 404.1521. This analysis is "'a de minimis screening device to dispose of groundless claims.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 153-54)). A finding of a non-severe impairment is appropriate only when the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . " Social Security Ruling ("SSR") 85-28; see also Yuckert, 482 U.S. at 154 n.12. This assessment, therefore, is independent of considerations of age, education, and vocational background. Yuckert, 482 U.S. at 151-54; Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

Here, there is substantial evidence to support the ALJ's finding of no severe mental impairment. (AR at 25.) As noted by the ALJ, psychiatrist Katalin Bassett,

M.D., psychologist Robert Stephen Smith, Ph.D., and state agency physician, Robert T. Ferrell, M.D., all concluded that Plaintiff had no more than mild to slight mental functional limitations. (JS at 23-24; AR at 25, 467-80, 498-538.) In his December 2004 review of the medical evidence, Dr. Ferrell noted Plaintiff only had mild limitations in i) restriction of activities of daily living, ii) maintaining social functioning, and iii) maintaining concentration, persistence, or pace. (AR at 467-80.) In addition, Dr. Ferrell noted the impairments were not expected to last more than twelve months. (Id.) Similarly, in January 2005, Dr. Smith concluded there were "no consistent indications that [Plaintiff's] cognitive abilities are affected by emotional distress." (Id. at 538.)

Dr. Bassett's and Dr. Smith's June 6, 2005 independent psychiatric medical examination of Plaintiff similarly concluded that she only has a minimal to slight Permanent Psychiatric Disability ("PPD"). (Id. at 516-17.) Dr. Bassett emphasized that Plaintiff "does not have any psychiatric disability that would preclude her from working as a drug counselor." (Id.) In their report, it is noted that even the evaluation of slight PPD was partially a result of Plaintiff exaggerating responses on her MMPI-2 and MCMI-III examinations. (Id.) Regarding Plaintiff's claims of emotional distress, the report notes the following:

> Her claim that from this one incident of October 19, 2003 she totally fell apart, both physically and emotionally, and could never go back to work as a drug counselor is clearly nonsense . . . .
>
> She is probably very angry with her employer because they placed her in a position she did not want to do, when she returned to work after her shoulder surgery. Still, her claim that she cannot do her job as a drug rehab counselor is not based upon realistic psychological symptoms, but is simply a manipulative effort on her part to get out of a job assignment she did not want to do. She did not want to do the same job in 2002 and ended up on a year of disability because they were going to transfer her,

and she claimed a psychiatric injury at the time.  I do not believe much changed other than she claims what sounds like an extreme amount of physical and emotion reaction to a relatively mild injury of October 19, 2003.

She is now applying for Social Security disability, which is a rather bad prognostic sign.  She <u>clearly does not have a whole lot of motivation to return to work</u>, in spite of her statement to the contrary.

(<u>Id.</u> at 514 (emphasis added).)

The ALJ properly gave weight to these opinions.  The findings of all three medical experts are consistent with and provide substantial evidence to support the ALJ's determination of no severe mental impairment.  Thus, there was no error.

### 2. **The ALJ Properly Discounted Findings of Severe Mental Impairment.**

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. <u>McAllister v. Sullivan</u>, 880 F.2d 1086, 1089 (9th Cir. 1989).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citing <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  <u>See</u> 20 C.F.R. § 404.1527(d)(2).  If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of ecord.

Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The same standards apply to examining physicians. See, e.g., Lester, 81 F.3d at 830-31.

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Here, even though Plaintiff attempts to discredit the ALJ's findings by pointing to the opinion of treating physician, Thomas Curtis, M.D., the ALJ demonstrated Dr. Curtis' opinion to be controverted and provided specific and legitimate reasons for rejecting the results of his examination. (JS at 20, 24-27.)

Plaintiff contends that Dr. Curtis' finding of moderate to moderate-to-severe Permanent Emotional Impairment was consistent with other opinions presented. (Id. at 21.) However, it is clear from the record that Plaintiff's assertion that Dr. Curtis' findings was "wholly consistent" with Dr. Basset is simply not an accurate representation of the findings. (Id.) As Plaintiff has admitted, Dr. Curtis endorsed

far greater limitations than Dr. Basset. (Id.) In fact, Dr. Basset commented on the poor quality of Dr. Curtis' written conclusion, adding that although Plaintiff may have a significant amount of disability, she doubted that it would be in the range of moderate as asserted by Dr. Curtis. (AR at 535.) Furthermore, in Dr. Basset's Medical Record Review, she went as far as to characterize Dr. Curtis' findings of moderate disability in work functions as nonsensical. (Id. at 534.) Here, Dr. Basset's examination findings constitute substantial evidence since it was based on independent clinical findings, and any conflict between these findings and Dr. Curtis' opinion is for the ALJ to resolve. See Andrews, 53 F.3d at 1041 (opinion of a nontreating source based on independent clinical findings may itself be substantial evidence).

Moreover, the ALJ provided specific and legitimate reasons to reject Dr. Curtis' findings. The ALJ noted Dr. Curtis' treatment notes were brief and consisted mostly of statements of Plaintiff's subjective complaints[3] and medication refill records, rather than "repeated mental status examinations or individualized therapy." (AR at 24-25, 685-88, 888-89, 890); see also Thomas, 278 F.3d at 957 (an ALJ is not required to accept the opinion of any physician, if that opinion is brief, conclusory, or inadequately supported by clinical findings); Matney, 981 F.2d 1016, 1019 (9th Cir. 1992.) Plaintiff points to two mental status examinations completed by Dr. Curtis as evidence of extensive testing or treatment and suggests

---

[3] Plaintiff is not challenging the ALJ's finding of Plaintiff's lack of credibility. The ALJ gave clear and convincing reasons to discredit Plaintiff's subjective complaints. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991). Specifically, the ALJ found key inconsistencies between Plaintiff's allegations and her daily activities such as doing personal care, shopping, doing the laundry and chores, driving and riding in a car, using the phone and computer daily, and attending college with good grades. (AR at 25-26.)

the ALJ had the duty to make inquiries for missing information. (JS at 22.) However, as the ALJ reasoned, Dr. Curtis contradicted his own diagnosis, as he never prescribed more aggressive treatment, including hospitalization, day treatment programs, group therapy, individual therapy, or even referred Plaintiff to another doctor. (AR at 25; JS at 26.)

Plaintiff also contends the ALJ failed to recognize the existence of any mental incapacity and suggests that not every mental condition would be "so incapacitating as to necessitate inpatient hospitalization." (JS at 21, 23). The first part of this contention is false and unduly suggestive since it is clear the ALJ determined the Plaintiff was free only from any <u>severe</u> mental impairment and not <u>all</u> mental impairment. (AR at 25.) The ALJ, in fact, recognized i) mild restrictions of activities of daily living; ii) mild difficulties in maintaining social functioning; iii) mild difficulties in maintaining concentration, persistence, or pace; and iv) no repeated episodes of extended-duration decompensation. (<u>Id.</u>) Moreover, Plaintiff's suggestion that not every mental condition requires hospitalization does nothing to advance her argument, but instead simply restates the obvious. Here, the evidence of a lack of more aggressive treatment when viewed in combination with other consistent medical findings supports the ALJ's conclusion that Plaintiff does not suffer from a severe mental impairment. Thus, there was no error.

**B.     The ALJ Properly Restated and Weighed the Physical Function Opinions of Treating Physicians Eilat, Nathan, and Salick.**

Plaintiff contends the ALJ did not properly restate and weigh the impairment opinions of treating physicians Paz Eliat, M.D., Ross Nathan, M.D., and Allen Salick, M.D. (JS at 27-31.) Specifically, Plaintiff argues the ALJ did not consider Dr. Eliat's October 2003 through January 2004 findings and mischaracterizes Dr. Nathan's opinion as being consistent with the ALJ's findings. (<u>Id.</u>) In addition,

Plaintiff alleges the ALJ committed error when he refused to credit Dr. Salick's opinions. (Id.)

As noted above, a treating physician's opinions are entitled to special weight, but are not necessarily conclusive. McAllister, 880 F.2d at 1089; Magallanes, 881 F.2d at 751. These opinions, if controverted, may be rejected with findings that set forth specific and legitimate reasons based on substantial evidence of record. Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751; Winans, 853 F.2d at 647. These same standards apply equally to determinations of physical disability as they do to findings of mental disability.

Here, the ALJ properly disregarded the October and November 2003 examination findings of Dr. Eliat as well as the results of his January 2004 examination. Throughout these examinations, Dr. Eliat maintained that Plaintiff be assigned to modified work duties restricting the use of her right arm and imposing the need to wear a wrist brace. (AR at 340, 359, 371.) Plaintiff contends these findings should have been considered. (JS at 29.) However, the ALJ is not required to "discuss every piece of evidence" so long as the decision was supported by substantial evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Rather, the ALJ need only explain why "significant probative evidence has been rejected." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393 (9th Cir. 1984). As explained by the ALJ, Plaintiff had subsequent surgery on her right hand for carpel tunnel syndrome in March of 2004 resulting in a full discharge of Plaintiff to return to work with no restrictions as of April 26, 2006. (AR at 23, 307.) Here, since the subsequent surgery completely remedied the prior impairment, Dr. Eliat's findings became immaterial to the analysis. Therefore, the ALJ was not in error in omitting discussion of Dr. Eliat's opinion.

Similarly, Plaintiff's contention that the ALJ mischaracterized the degree of consistency between his determination and Dr. Nathan's opinion is without merit.

(JS at 28-29.) Plaintiff suggests the ALJ's determination was not as limiting to Plaintiff's physical movements as Dr. Nathan had suggested. (Id.) Plaintiff asserts the ALJ only limited Plaintiff to "'frequent' - but not 'constant' - reaching, handling, fingering, and feeling," whereas Dr. Nathan's December 2003 opinion restricted Plaintiff from any heavy/repetitive gripping, grasping, lifting, or squeezing with the right hand. (Id.; AR at 358.) This assertion, however, is without merit as Plaintiff was discharged from surgery with no restrictions in April 2006 by Dr. Nathan himself, as noted above. (AR at 307.) Therefore, the ALJ's assertion of consistency was accurate and not a mischaracterization of the medical evidence. (Id. at 24.)

Plaintiff also argues the ALJ failed to give proper weight to the opinion of treating physician Dr. Salick. (JS at 29.) Dr. Salick opined that Plaintiff was diagnosed with fibromyalgia and could never stand, walk, or sit, for even one hour. (AR at 663, 668.) Based on his August 2005 exam, Dr. Salick further found Plaintiff to be totally impaired. (Id. at 663-64.)

In this case, the medical opinions of both medical expert, R. Halpern, M.D., and examining physician, Warren David Yu, M.D., contradicted Dr. Salick's opinion. (Id. at 483-86, 487-95.) In his independent clinical examination, Dr. Yu found the following:

> Based on today's examination, the patient should be able to walk without an assistive device. She should be able to sit for up to six hours in an eight-hour day. She should be able to stand or walk for up to two hours in an eight-hour day. She should occasionally be allowed to pick up 20 pounds, and frequently 10 pounds. She should have only frequent use of the upper extremities for pushing, pulling, fine finger motor movements and handling. She should be limited to only occasional squatting, stooping, kneeling, crawling, climbing, bending or lifting.

(Id. at 486 (emphasis added).) Similarly, Dr. Halpern's February 2005 medical assessment of Plaintiff's residual functional capacity matched that of Dr. Yu. (Id. at 487-97.)

Here, both Dr. Yu and Dr. Halpern's findings contradicted Dr. Salick's opinion that Plaintiff could never stand, walk, or sit for even one hour. These contradictory findings, which include Dr. Yu's independent clinical evaluation, constitute substantial evidence, based on which the ALJ could properly reject Dr. Salick's opinion. See Andrews, 53 F.3d at 1041.

Plaintiff also contends that the ALJ was incorrect to suggest there were inconsistencies between Dr. Salick's recommendation of physical exercise and his diagnosis of physical impairment.[4] (JS at 30.) However, the ALJ did not rely solely on the perception of inconsistencies between Dr. Salick's recommendation and diagnosis to reject those findings. Instead, Dr. Salick's findings were specifically contradicted by other examining physicians such as Dr. Yu and Dr. Halpern. (AR at 483-86, 487-95.) These other findings constituted specific and legitimate reasons for the ALJ's rejection, and, therefore, any error was harmless. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding liability).

/ / /

/ / /

/ / /

/ / /

**IV.**

---

[4] Plaintiff was diagnosed with fibromyalgia and cites the Fibromyalgia Pamphlet from the American College of Rheumatology as stating that "regular exercise is one of the most effective treatments for fibromyalgia." (JS at 30-31.)

## **ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: August 24, 2009

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge